## Case No. 16,319.

### UNITED STATES v. SMITH.

[2 Blatchf. 127.] 1

Circuit Court, N. D. New York. Oct. 7, 1850.

CUSTOMS DUTIES — COLLECTION LAWS — NONDE-LIVERY OF MANIFEST—CONSTRUCTION OF STATUTES.

1. The 1st section of the act of March 2d, 1821 (3 Stat. 616), as re-enacted by the act of March 3d, 1823 (3 Stat. 781), which imposes a penalty for bringing into the United States from adjacent territory goods subject to duty, and not delivering a manifest thereof at the nearest collector's office, is not repealed by section 19 of the act of August 30th, 1842 (5 Stat. 565).

[Cited in U. S. v. Nolton, Case No. 15,897; U. S. v. The Cuba, Id. 14,898; The Coquitlam, 57 Fed. 718.]

2. The first two acts and the last act provide for a very different class of offences. The former attach the penalty to the mere neglect to deliver a manifest, no matter what the intent. In the latter, there must be an intent to defraud the revenue, and either smuggling or an attempt to pass a fraudulent invoice.

[Cited in U. S. v. Batchelder, Case No. 14,-540.]

3. The act of 1821 does not require either a formal entry at the collector's office or an invoice, and the system established by it is a distinct one, applicable to the frontiers adjacent to foreign territories.

4. The act of 1842 is aimed at frauds on the revenue, in cases where an entry of goods and an invoice are required, as prescribed by the act of March 1st, 1823 (3 Stat. 729).

---

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

This was a writ of error to the district court [of the United States for the Northern district of New York].

The action was debt, brought by the United States against [Abel B.] Smith, to recover a penalty under the acts of congress passed March 2d, 1821, and March 3d, 1823 (3 Stat. 616, 781). The declaration set forth, in substance, that the defendant brought from Canada into the United States, in the collection district of Cape Vincent, certain goods and merchandise subject to duty, and neglected and refused to deliver a manifest thereof at the nearest collector's or deputy-collector's office, and passed by and avoided such office, contrary to the provisions of the acts of congress above referred to; and claimed the penalty of four times the value of said merchandize. The defendant pleaded nil debet. On the trial, the counsel for the defendant admitted that a cause of action had been made out, and that the United States were entitled to recover according to the case as presented by the declaration; but insisted that the penalty imposed under the acts of 1821 and 1823 had been abrogated by the 19th section of the act of congress of the 30th of August, 1842 (5 Stat. 565). The court so ruled, to which ruling the plaintiffs excepted, and, after verdict and judgment for the defendant [case unreported], they brought a writ of error.

James R. Lawrence, Dist. Atty., for plaintiffs in error.

Bernard Bagley, for defendant in error.

NELSON, Circuit Justice. By the 1st section of the act of March 2d, 1821, it is made the duty of the masters of vessels, except registered vessels, and of every person having charge of any boat, &c., and of the conductor or driver of any carriage or sleigh, and of every other person coming from any foreign territory adjacent to the United States, into the United States, with merchandize subject to duty, to deliver, immediately on his arrival within the United States, a manifest of the cargo or loading of such vessel, boat or carriage, or of the merchandize so brought from the foreign territory, at the office of any collector or deputy-collector which shall be nearest the boundary line, &c.; and every such manifest shall be verified by the oath of the person delivering the same, which shall state that such manifest contains a full, just and true account of the kinds, quantities and values of all the merchandise so brought from the foreign territory; and it is provided that, in case of neglect or refusal, or of passing by or avoiding the office, the said merchandise, together with the vessel, boat or carriage, shall be forfeited to the United States, and the person offending shall be subject to a penalty of $400.

The act of March 3d, 1823, substantially re-enacts this provision, changing the penalty of $400 to a penalty of four times the value of the merchandise.

The 19th section of the act of August 30th, 1842, provides, that if any person shall knowingly and wilfully, with intent to defraud the revenue of the United States, smuggle or clandestinely introduce into the United States any goods, wares or merchandise subject to duty, and which should have been invoiced, without paying or accounting for the duty, or shall make out, or pass or attempt to pass through the custom-house, any false, forged or fraudulent invoice, every such person, &c., shall be deemed guilty of a misdemeanor, and, on conviction, shall be fined not exceeding $5,000, or imprisoned for a term not exceeding two years, or both.

The question presented is, whether this section has the effect necessarily to repeal the aforesaid provisions of the acts of 1821 and 1823. If it has, it must be by implication, on account of the repugnancy and inconsistency of the two provisions, as there is no repeal in express terms; and, in order to ascertain this, it will be material to compare the two acts, and ascertain with care their import and effect.

The offence, in the acts of 1821 and 1823, consists in the neglect or refusal to deliver at the office of the collector, or of his deputy, nearest the boundary line, or nearest the road or waters by which the goods are brought, the manifest prescribed in the act, of merchandise subject to duty brought into the United States from an adjacent foreign territory; or, the passing by and avoiding such office. The simple neglect or refusal to deliver the manifest, under the circumstances stated, or the passing by and avoiding the office, constitutes the offence, and subjects the party to the penalty. The intent which accompanies the neglect or refusal, or the passing by and avoiding the office, is not made an element of the offence, or the subject of inquiry on the trial. If the fact of neglect or refusal appears, the penalty follows.

The offence, in the act of 1842, consists in knowingly and wilfully, and with an intent to defraud the revenue, smuggling or clandestinely introducing into the United States merchandize subject to duty, and which should have been invoiced, without paying or accounting for the duty; or, the making or passing, or attempting to pass, at the custom-house, a false, forged or fraudulent invoice. The act must be smuggling or clandestinely bringing into the United States merchandize subject to duty; and it must be done with a wilful intent to defraud the revenue. These are essential elements to constitute the offence, and must be established on the trial, to warrant a conviction.

Now, it seems to me that this analysis and comparison of the two acts show that they provide for an entirely distinct and different class of offences, depending upon a totally different state of facts and circumstances, and are to be regarded as separate and distinct parts of the system of the government

to prevent evasion and fraud in collecting the revenue. Their only identity consists in their object and purpose, to wit, to guard the customs. But, in this there is no repugnancy; as penal acts for this purpose in the statute book are numerous and constantly enforced. The repeal of a statute by implication is not favored by the courts, and is never allowed unless the repugnancy is plain and unavoidable, so that the two acts are incapable of being reconciled. Wood v. U. S., 16 Pet. [41 U. S.] 342. Here, both statutes may well stand together, as the acts constituting the offence in the former are not covered by the latter. The former prescribes particular regulations to be observed on the frontiers by the importers of foreign merchandize, with a view to guard the revenue, annexing a penalty in case of a non-observance. The violation of these comes far short of making out the offence under the latter. Both are directed against the importation of foreign merchandise without payment of the duty, but under a different state of facts and circumstances, and prescribing a punishment according to the aggravation of each case respectively. Hence, where the act is done knowingly and wilfully, and with an intent to defraud, fine and imprisonment are annexed.

It is not necessary to say that the latter act is cumulative; indeed, it cannot be properly so regarded, because it is not for the same offence. Neither is it necessary to say that the party could be punished under each statute for the same importation of merchandise. That is a very different question from the one presented, and which I have been considering. The same act, committed under different circumstances, may be the subject of different degrees of punishment, as an assault, and an assault with intent to kill; but, it by no means follows that the party is punishable by the infliction of each penalty.

But, independently of the above views, there is also another upon which I am of opinion that the judgment below must be reversed.

By the 19th section of the act of 1842, the punishment is inflicted for smuggling goods subject to duty, and which should have been invoiced; and for making, or passing or attempting to pass at the custom-house, false, forged or fraudulent invoices.

The act of congress of the 1st of March, 1823 (3 Stat. 729), requires that an invoice shall be delivered to the collector when an entry of goods is made at the custom-house, giving to him, in certain cases, a limited discretion as to the time when it is to be produced; and it is against the smuggling of goods which, if regularly imported, should have been accompanied with this invoice, and against the fabrication of fraudulent invoices, that the 19th section of the act of 1842 is directed.

Now, the act of 1821 refers to a different class of importations. No formal entry by

the importer need be made at the office, nor need the goods be accompanied with an invoice. All that is necessary is the delivery of the manifest prescribed by the act, at the office of the collector, or of his deputy, nearest the boundary line, or nearest the road or waters by which the goods have been brought, together with the verification of the same. Upon this being done, the duties are paid or secured. The act dispenses with the invoice.

If, in view of the act of March 1st, 1823, which requires that an invoice should accompany the entry of goods at the custom-house, there could be any doubt that the construction I have put upon the act of 1821 is correct, all doubt is removed by the act of March 3d, 1823, which, though passed after the act of March 1st, 1823, yet substantially re-enacts the first section of the act of 1821, and changes the penalty, thereby re-affirming that act, which dispenses with the invoice.

It is apparent that an essential element to constitute the offence under the 19th section of the act of 1842 is wanting, in the importation of goods provided for in the act of 1821. There is nothing in the latter act requiring that they should be invoiced. The system is a distinct one, applicable to the frontiers adjacent to foreign territories. I am constrained, therefore, to differ from the court below, and to reverse the judgment there rendered. Judgment reversed, and venire de novo.